THE PEOPLE, on the relation of Taylor and others, *vs.*
THOMPSON and others.

To an *information* in the nature of a *quo warranto*, charging individuals with claiming, using and exercising the franchise of being a *body politic and corporate*, and acting as a corporation, it is not necessary to deny the *claim;* it is enough to deny the *user* of the franchise.

QUO WARRANTO. The attorney general filed an information in the nature of a *quo warranto*, charging the defendants with *claiming, using* and *exercising* the liberties, privileges and franchises of being a *body politic and corporate*, by the name of The Harlaem Bridge Company, and to have and maintain a bridge across the Harlaem river, and to ask, de-

*Margin note:* NEW-YORK, May, 1837. The People v. Thompson.

mand and take tolls and duties from all persons using the bridge; and also the liberties, privileges and franchises of *acting* within this state, to wit, at, &c. *as a corporation* by the name of The Harlaem Bridge Company, *without being legally incorporated*, and, as *such corporation*, of having and maintaining a bridge, &c. To that portion of the information charging the defendants with claiming and exercising the liberties, privileges and franchises of *being a body politic and corporate and of acting within the state as a corporation*, they answered that they never *used* such liberties, privileges and franchises; and to that portion of the information charging them with claiming the privilege of maintaining a bridge and demanding tolls, they set forth their title under various acts of the legislature. The attorney-general demurred to the answer, for the cause that it did not meet the charge of a *claim* on the part of the defendants to be *a body politic*, and the defendants joined in demurrer. The pleadings also presented the rights of the defendants *upon the merits*, upon which the court passed; but as the questions discussed and determined are not of general interest, the report of the case is restricted to the question of pleading as above presented.

*D. Lord, jun. & S. Beardsley*, (attorney general,) for the people.

*M. T. Reynolds & G. Griffin*, for the defendants.

*By the Court*, NELSON, C. J. The demurrer of the attorney general to so much of the plea as professes to answer the first count in the information, raises the question whether, under the provisions of the revised statutes authorizing an information in the nature of a *quo warranto*, 2 R. S. 581, § 28, the defendants are bound to answer specifically the averment that they *claim* to use and exercise a franchise within this state, or in other words, to act as a corporate body within this state, without any warrant or grant for that purpose. If they are obliged to answer the charge of a *mere claim* to exercise corporate privileges, disconnected

from any allegation of *user*, then, undoubtely, the plea is bad, for it contains only a denial of the *user*. The defendants, if so bound to answer, should have set forth title, or disclaimed. The language of the statute, so far as concerns this case, is as follows : an information in the nature of a *quo warranto* may be filed, &c. " where any person shall *usurp, intrude into, or unlawfully hold* or *exercise* any public office, civil or military, or *any franchise* within this state ;" or " where any association or number of persons shall *act* within this state as a corporation, without being legally incorporated." The first clause seems obviously to require something beyond a *claim* to an office, or to the exercise of a franchise, to authorize the institution of proceedings; and the last confines the proceedings expressly to the case of persons *acting* as a corporation. .To " usurp, intrude into, or unlawfully hold or exercise" an office, or *franchise*, which last term may include *corporate powers*, means to take possession of the office or franchise without right, or unlawfully to hold or use the same after possession has been rightfully or wrongfully acquired.

The words of the statute were taken from the 9th Ann, c. 20, § 4, under which act it has been repeatedly determined there must be a *user* or *possession* of the office or franchise, to authorize the information, and that a *mere claim* is insufficient. *Rex v. Ponsonby*, 1 Ves. jun. 1. *Rex v. Whitwell*, 5 T. R. 86. Bull. N. P. 211. 4 East, 337. 3 Bac. Abr. 645. Willcock on Corp. 462, pl. 254, 5, 6. Angel on Corp. 486. It was insisted on the argument, by the counsel for the people, that this was only a rule of practice which the king's bench had established and applied on the motion for leave to file an information. An examination of the authorities will show that such proposition cannot be maintained. The case of *Rex v. Ponsonby*, which is a leading one, underwent very full discussion. It originated in the K. B. in Ireland, [the statute there being a copy of 9 Ann,] and came before the K. B. in England, on error, in 1755, where the judgment was reversed, which reversal was afterwards sustained in the house of lords. The information was filed against seven persons, charging them with

NEW-YORK,
May, 1837.

The People
v.
Thompson.

NEW-YORK,
May, 1837.

The People
v.
Thompson.

usurping the office of free burgesses of the corporation of Newtown. The question whether it would lie against two of them, who, though elected, had not been admitted or sworn in, came up on the pleadings. Chief Justice Rider, who delivered the opinion of the court in error, states one question to be, " whether it [the information] lies against the two non-acting burgesses," and adds, " it clearly cannot, upon this ground, that under the words of the statute there must be usurpation, intrusion, or unlawful holding. Now, *claiming,* which only appears against them, (they had claimed in their plea to be admitted and sworn in,) can by no construction be taken to amount to any of these, and it would be strange to imagine the statute intended ever to prevent the asserting or claiming a right." " The practice now generally," he says, ",is to have an affidavit of some act of usurpation, upon application to the court for leave to file the information." This practice, as appears from the above authority, is not an arbitrary regulation of the court ; it is the evidence of a fact before the institution of the proceedings to bring the case within the provisions of the statute ; and without the existence or proof of which, those proceedings would be ineffectual if permitted. It is the establishment of a *prima facie* case for the interference of the court, and which, if sustained upon a more formal and deliberate litigation, will justify a judgment of ouster. All the precedents in the books support this view. I have examined some thirty, every one of which charge that the defendant or defendants did *use* and *exercise,* and from, &c. to the exhibiting of the information, hath or have *used* and *exercised,* &c. The 48th section of the statute, 2 R. S. 585, may also be referred to, which prescribes the judgment in case of conviction. If the defendant be " found or adjudged guilty of *usurping* or *intruding into,* or unlawfully *holding* or *exercising* any office, franchise or privilege, judgment shall be rendered that such defendant be *ousted,* and altogether excluded from such office, franchise or privilege," &c. It would seem something like an absurdity to give judgment of *ouster* against a person, from an office which he never was in, or from a franchise which he never held or used,

If the above view be correct, then the first count in the information is fully answered by the plea. It denies the allegation of using and exercising the franchises and privileges of a *corporation*, which constitutes the *gravamen* of the charge. If this is not admitted on the record, or proved in case of denial, no judgment can be rendered against the defendants. It contains the very essence of the complaint under the statute.

Judgment for defendants.